

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3032 | **DATE** | 8/18/2004 |
| **CASE TITLE** | Harris vs. Picture People | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]  Enter Memorandum Opinion and Order. Defendant's Motion for Summary Judgment is hereby granted. *AK*

(11)  x  [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 2 0 2004 | |
| ✓ | Docketing to mail notices. | | date docketed | 21 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| AC | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 2004 AUG 19 AM 11:21 Date/time received in central Clerk's Office | date mailed notice | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PHYLLIS L. HARRIS,           )
                             )
            Plaintiff,       )
                             )
    v.                       )    Case No. 03 C 3032
                             )
THE PICTURE PEOPLE,          )    Magistrate Judge Arlander Keys
                             )
            Defendant.       )

**DOCKETED**
AUG 2 0 2004

### MEMORANDUM OPINION AND ORDER

Plaintiff Phyllis Harris sued her former employer, the
Picture People (the "Company"), alleging violation of the
Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et
seq.* (West 2004). Harris began working for the Company, which
operates photographic studios for children, in 1995. Harris
injured her elbow twice on the job, once in March 2001, and again
in December 2001, and she missed a substantial amount of work as
a result each time. Purportedly because Harris failed to return
to work after her second medical leave, the Company fired her on
January 9, 2002. On May 6, 2003, Harris sued, alleging that the
Company fired her because of her disability, in violation of the
ADA. The case is presently before the Court on the Company's
motion for summary judgment.

21

On March 7, 2001, while working as a manager for the Company, Harris injured her elbow while moving heavy boxes. She received medical treatment for the injury and took medical leave for at least three weeks to recover.[1] After she returned to work, she again injured her elbow, this time while lifting a can of trash to dump it in a bin outside of the studio on December 12, 2001. *See* Deposition of Phyllis Harris, pp. 22-23 (attached to Defendant's Statement of Material Facts). Company records indicate that Harris' mother informed Harris' supervisor of the injury on December 13, 2001, and that information regarding Ms. Harris' injury was reported to the corporate office on December 14. *See* Call Records, pp. 8-9 (attached as Exhibit C to Plaintiff's Response Memorandum).

On December 19, 2001, Ms. Harris saw Dr. Ida Washington, who diagnosed her with tendonitis and degenerative joint disease. *See* Physician's Records, p. 14 (attached as Exhibit C to Plaintiff's Response Memorandum). That same day, Dr. Washington notified the Company that Ms. Harris was unable to work due to the elbow injury, and that she would return to work on January 2, 2002. *Id.,* p. 7.

---

[1] The Court says "at least" because the record is not exactly clear about how much time Harris actually took off for the March injury. A couple of records suggest that the leave extended from March 18 to either April 8 or April 16; another suggests that Harris may not have returned to work until August. But, as a practical matter, it doesn't matter for present purposes.

The parties disagree about whether Ms. Harris was authorized to be off work during the week after January 2, 2002, or whether the Company should have known that she was so authorized. Ms. Harris asserts that during her leave she "made frequent telephone contact with the store, and caused her doctor . . . to fax information related to her disability to the corporate headquarters." Plaintiff's Response Memorandum, p. 3. And Dr. Washington did send one fax regarding Ms. Harris' disability to the Company, but this fax only stated that she was on leave until January 2. *See* Physician's Fax (attached as Exhibit C-7 to Plaintiff's Response Memorandum). Ms. Harris also testified during her deposition that she spoke with her supervisor, Maribeth St. Aubin, around December 16, 2001, and again on December 21, 2001, but the testimony indicates that these conversations were about deposits allegedly missing from Ms. Harris' shifts, not medical leave. Deposition of Phyllis Harris, pp. 82-85. Ms. Harris' deposition testimony further references conversations with Elise Manning, an assistant manager, but those conversations took place after Harris no longer worked for the Company and concerned Harris's termination. *Id.*, pp. 16-17. Further, Company records dated January 9, 2002 suggest that the Company believed, based on the December 19 doctor's note, that Ms. Harris was to return to work on January 2. *See* Call Records, p. 5 ("Phylis [sic] 10630 – Knew she was supposed to be back on ½

3

- no showed"). And Dr. Washington's records leave a gap during the period from January 2 to January 9; one note references medical leave lasting from December 19 to January 2, and another references leave lasting from January 9 to January 30. Physician's Records, p. 14.

On January 9, 2002, Ms. Harris saw Dr. Washington again, and she prescribed occupational therapy and further restricted Ms. Harris from working until January 30, 2002. Physician's Records, p. 14. That same day, the Company made the decision to fire Ms. Harris, claiming that it viewed her as AWOL when she failed to show up for work for more than a week after the date her doctor's note indicated she would return. *See* Defendant's Memorandum of Law in Support of Summary Judgment, p. 2 n.2. The record does not indicate whether or when the Company learned that Ms. Harris' medical leave had been extended to January 30, but it is clear that it made no attempt to reinstate her when and if it did.[2]

On August 29, 2002, Ms. Harris filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), claiming that she had been discriminated against because of her disability. On January 28, 2002, the EEOC sent Ms. Harris a right-to-sue letter by way of certified mail to a post office box

---

[2]On January 30, 2002, Dr. Washington released Ms. Harris to return to work with the restriction that she perform only light duty. *See* Physician's Records, p. 14 (attached as Exhibit C to Plaintiff's Response Memorandum). The light duty restriction was apparently in place until October 21, 2002. *See id.*, p. 15.

4

address. *See* EEOC Dismissal and Notice of Rights (attached as Exhibit A to Defendant's Statement of Material Facts). The letter explained that Ms. Harris must bring suit "within 90 days from your receipt of this Notice; otherwise your right to sue is lost." *Id.* It is unclear when, exactly, Ms. Harris received the right-to-sue letter, though she unquestionably received it at some point.

On May 6, 2003, Ms. Harris filed suit against the Company for discriminatory discharge. The parties consented to proceed before a magistrate judge, and the case was reassigned to this Court on October 28, 2003. Thereafter, the Company moved for summary judgment, arguing that Ms. Harris did not timely file her suit and that she cannot qualify for protection under the ADA.

## DISCUSSION

Summary judgment will be granted where the pleadings and supporting documents show that there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Whether a fact is material to the dispute is established by the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1985). A genuine issue as to one of these material facts exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

In a summary judgment proceeding, the Court will disregard all facts not properly supported by the record. *Brasic v. Heinemann's, Inc.,* 121 F.3d 281, 284 (7th Cir. 1997). The Court does not make "credibility determinations nor choose between competing inferences" at the summary judgment stage. *Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1041 (7th Cir. 1993). However, in determining whether a genuine issue of material fact exists, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *Shank v. William R. Hague, Inc.,* 192 F.3d 675, 681 (7th Cir. 1999).

The moving party initially bears the burden of showing that the record contains no genuine issue of material fact. *Celotex,* 477 U.S. at 323. The moving party need not negate its opponent's claim. *Id.* at 322. Instead, with respect to issues on which the non-moving party bears the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'-- that is, pointing out to the district court-- that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

If the moving party meets its burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial; the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading . . . ." *Anderson,* 477 U.S. at 248, 257. Additionally, "mere

conclusory" allegations are inadequate. *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1002 (7th Cir. 1998). The non-moving party must present more than a "metaphysical doubt as to the material facts" to survive summary judgment. *Matsushita Elec. Indus. Co, v. Zenith Radio Corp.*, 475 U.S. 574, 596 (1986). The non-moving party will not survive summary judgment if it cannot present sufficient evidence to support each element of its case on which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

Under Local Rule 56.1, the party moving for summary judgment must submit a statement of material facts, written in short numbered paragraphs with citations to admissible evidence. Loc. R. 56.1(a); *Smith v. Lamz*, 321 F.3d 680, 682 (7th Cir. 2003). The opposing party must respond to each paragraph by either admitting or denying the allegations and specifically citing to supporting materials showing the existence of a genuine factual dispute. Loc. R. 56.1(b)(3)(A). The Seventh Circuit has repeatedly held that a district court is entitled to expect firm compliance with Rule 56.1. *Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) ("Given their importance, we have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment"). In fact, if the party opposing summary judgment fails to submit a 56.1(b) statement and

point to supporting material in the record, the moving party's statements will be deemed admitted as long as they are supported in the record. Loc. R. 56.1(b)(3)(B); *Garrison v. Burke,* 165 F.3d 565, 567 (7th Cir. 1999).

Two points must be addressed at the outset. First, as the Company points out, Ms. Harris did not file a Rule 56.1 Statement in Response to Defendant's Statement of Material Facts. Accordingly, under the standard set forth above, the statements in the Company's Statement of Material Facts will be deemed admitted to the extent they are supported in the record. Second, the question of whether the Company had a legitimate non-discriminatory reason to fire Ms. Harris is not before the court. The Company seeks summary judgment on two grounds: (1) that Harris' complaint was untimely, and therefore should be dismissed; and (2) that Harris is not protected by the ADA because she is not "disabled" as defined by the Act. The Court addresses these points, and only these points, below.

A.    The Timeliness of Harris' Suit

The Company first argues that it is entitled to summary judgment because Ms. Harris filed her suit too late. A plaintiff must file her suit within ninety days from the date the EEOC gives notice of the right to sue. 42 U.S.C. § 12117(a); *Houston v. Sidley & Austin,* 185 F.3d 837, 838-39 (7th Cir. 1999). This deadline is not simply a jurisdictional prerequisite, but is

condition precedent to relief. *Perkins v. Silverstein,* 939 F.2d 463, 469-70 (7th Cir. 1991). This is a strict rule, and filing even a few days late will be fatal. *See, e.g., Jones v. Madison Service Corp.,* 744 F.2d 1309, 1314 (7th Cir. 1984)(affirming an award of summary judgment in the defendant's favor based on the fact that the plaintiffs filed their suit two days late); *Wilson v. Doctor's Hospital of Hyde Park,* 909 F. Supp. 580, 581 (N.D. Ill. 2000)(dismissing a complaint because ·it was filed one day late); *Brown v. City of Chicago,* No. 96 C 3078, 1998 WL 704278, at *3 (N.D. Ill. Sept. 30, 1998)(granting summary judgment in favor of the defendant based on the fact that the plaintiff filed his suit three days late).

In the Seventh Circuit, the ninety-day period generally does not begin to run until the plaintiff actually receives notice of her right to sue. *Houston,* 185 F.3d at 839. However, this actual notice rule only protects a plaintiff where actual notice was not delayed by the plaintiff's own fault. *Bobbitt v. Freeman Co.,* 268 F.3d 535, 538 (7th Cir. 2001). Courts have frequently determined that a plaintiff is at fault for a delay if she does not acquire her right-to-sue letter from her mailbox before the Postal Service returns the letter to the EEOC. *E.g., Houston,* 185 F.3d at 839; *Ungeran v. Commonwealth Edison, No. 00 C 5312,* 2001 WL 1035181, at *2 (N.D. Ill. Sept. 7, 2001); *Jones v. Motorola,* No. 00 C 6439, 2001 WL 864273, at *5 (N.D. Ill. July

30, 2001).

Ms. Harris does not dispute that she did, in fact, receive the right-to-sue letter at some point; but she does not know or have record of the precise date. *See* Plaintiff's Response Memorandum, p. 3. She notes that, as a general rule, the Postal Service would have left a notice in her post office box that certified mail was being held for her, that she would have received this notice in her post office box that night, and that she would have retrieved the certified mail from the Postal Service the next day. *Id.*

Ms. Harris contends in her brief that the Postal Service should know when she picked up the certified letter because it would have a record documenting the date, and she further contends that the EEOC has requested a copy of that record. Plaintiff's Response Memorandum, p. 3. But four months have passed since Ms. Harris submitted her brief, and she still has made no attempt to provide the Court with any proof of the actual receipt date. It is Ms. Harris' burden to produce this information, because she is the party with access to these facts. *Houston*, 185 F.3d at 840, n.5; *Davis v. Panasonic, No. 02 C 1431*, 2002 WL 31415726, at *2 (N.D. Ill. Oct. 28, 2002). Moreover, when confronted with a motion for summary judgment, the plaintiff must produce evidence to show that she could ultimately prevail; as the Company correctly points out, summary judgment "is the

10

'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)(quoting *Schacht v. Wisconsin Department of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999)).

Without any proof of receipt, and without any proof about a return to the EEOC, the Court is left to apply the traditional presumption that letters are received five days after the mailing date. *See Loyd v. Sullivan*, 882 F.2d 218, 218 (7th Cir. 1989) ("unless proven otherwise, the receipt date is presumed to be five days from the mailing date"); *Saunders v. American Warehousing Services, Inc.*, No. 02 C 7650, 2003 WL 21266652, at *2 (N.D. Ill. May 30, 2003) ("the five-day receipt presumption is a useful abstract fiction when the Court has no other facts to rely upon"). The EEOC right-to-sue letter was dated January 28, 2003, so the Court presumes that Ms. Harris received the letter on February 3, 2003.[3] Starting the ninety-day clock on that date, Ms. Harris should have filed her lawsuit by May 5, 2003.[4] Harris filed her suit on May 6, 2003, one day too late.

---

[3] The five days would actually have run on February 2, 2003, but because that day was a Sunday, the Court uses February 3 as the receipt date.

[4] Here again Ms. Harris benefits from the fact that the ninety-day period would actually have expired during the weekend preceding May 5.

11

Although the result – throwing Ms. Harris out of court because she filed her complaint one day late – seems harsh, it is the result mandated by the law in this Circuit. Moreover, as the Court will explain below, the blow is softened to some extent because, even if Ms. Harris survived summary judgment on the timeliness issue, she would nonetheless lose on the merits of her claim.

B.   Harris' Eligibility for Protection Under the ADA

The ADA protects from disability discrimination qualified individuals with disabilities. 42 U.S.C. § 12112(a). The Company argues that it is entitled to judgment as a matter of law because Ms. Harris does not qualify as such. To prevail on her ADA claim, Ms. Harris must show that (1) she is "disabled"; (2) she is qualified to perform the essential functions of her job either with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. *Furnish v. SVI Systems, Inc.*, 270 F.3d 445, 448 (7th Cir. 2001). A person is "disabled" if she: (1) has a physical or mental impairment which substantially limits one or more of her major life activities; (2) has a record of such an impairment; or (3) is regarded by her employer as having such an impairment. 42 U.S.C. § 12102(2). Ms. Harris' lawsuit implicates the first and third categories; she alleges both that she has a physical impairment that substantially limits her major life activities,

12

and that the Company regarded her as having such an impairment.

(1)  Actual Impairment

To determine whether Ms. Harris has an actual impairment
that qualifies her as being disabled under the ADA, the Court
first asks whether she has a physical or mental impairment, and
then asks whether, because of that impairment, she is
substantially limited as to a major life activity.  42 U.S.C. §
12102(2)(A); see also Bragdon v. Abbott, 524 U.S. 624, 631, 637,
639 (1998); Furnish, 270 F.3d at 449.  The Company does not
dispute that Ms. Harris has a physical impairment, and rightly
so.  The regulations implementing Title I of the ADA describe a
physical impairment as "any physiological disorder, or condition
. . . affecting one or more of the following body systems:
neurological, musculoskeletal, special sense organs . . . ."  29
C.F.R. § 1630.2(h).  Ms. Harris' tendonitis, a physical condition
affecting one of her joints, clearly meets this standard.  The
question is whether her impairment renders her "substantially
limited" in any "major life activities."

At her deposition, Ms. Harris testified that her injury
prevented her from doing certain work-related tasks; she
testified that, at the Company's studio, "[y]ou pick kids up, you
pick children up, you move props, you lift garbage, you lift
things, and some of those things I could not do on my own
anymore."  Deposition of Phyllis Harris, p. 16.  When asked about

13

how she was limited in her ability to function at home, Ms. Harris testified that she was, and is, unable to do "[a]nything that required that, grasping something, or mainly was picking up . . . [a]nything that put force on [her left arm]"; she was able to button buttons and zip zippers if they were in the front of her clothing, but "if I have anything behind that I have to reach with my arm, I have to have help." *Id.*, pp. 80-81. She also testified that she needs help "[o]pening jars" and doing "anything that I had to lift anything or do as far as where I needed both of my arms. I could use my one arm to do a lot of things, but if I needed some help then, anything using that left arm, no." *Id.*, p. 81. She testified that she cannot do "anything that I have to do that requires me to put any type of strain on my left arm . . . ." *Id.* She testified that she is not otherwise restricted in her ability to function. *Id.*, p. 82.

Beyond Harris' deposition testimony, the record contains medical records written by Dr. Washington, as well as deposition testimony from Dr. Henry Fuentes, another doctor who treated Harris. The medical records indicate that on December 19, 2001, Harris had "exquisite tenderness" in her elbow and "lack[ed] about 10 degrees of elbow extension"; as of January 9, 2002, she was still experiencing tenderness. Physician's Records, p. 14. The records show that, by January 30, 2002, however, Harris' status was "improved." *Id.* She reported that she "still has

pain at times" but that, overall, she was experiencing "less pain"; she reported that her arm was feeling "much stronger," and Dr. Washington noted that Harris had made "good gains with grip and pinch strength." *Id.* At his deposition on July 26, 2002, Dr. Fuentes described Harris' prognosis as "fair" and stated that, as of that date, Harris' only restriction was that she avoid "excessive gripping, grasping, and pulling" at work. Deposition of Dr. Henry Fuentes, pp. 12-13 (attached as Exhibit A to Defendant's Reply Memorandum. According to the medical records, on October 22, 2002, Harris reported "feeling much better"; Dr. Washington noted that, on physical examination, Harris had "no tenderness about the elbow" and "good range of motion," and that she was not generally experiencing pain except "mild pain on resisted forearm supination." Physician's Records, p. 15. As a result of that examination, Dr. Washington released Ms. Harris "to work full duties." *Id.*

Initially, with respect to the above-described evidence, the Court notes that the testimony from Ms. Harris dealing with her inability to lift various items at the studio is not enough to show that she is substantially limited in any major life activity. Because of the way Ms. Harris described these limitations, it is clear that she experienced them at a time when she was working at the studio; she stated that she could not do certain lifting activities "anymore." *Id.*, p. 16. But because

15

Ms. Harris did not return to work after her second injury, this testimony can only be in reference to her performance on the job after her first injury, the effects of which are not at issue in this case. This line of testimony is, therefore, irrelevant; certainly it has no impact on the Court's assessment of her abilities and limitations as they existed after the second injury, and after her doctor released her to return to work without restriction. Thus, the Court is left to determine whether a jury could find that Ms. Harris' other limitations – what she described as not being able to reach behind her back, not being able to open new jars, and not being able to do anything that puts any type of strain on her left arm – amount to substantial limitations in a major life activity. 42 U.S.C. § 12102(2)(A).

The regulations interpreting the ADA state that major life activities are tasks such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The Supreme Court has recently ruled on the specific issue of manual tasks, which is the only category of activities implicated by Ms. Harris' allegations. In *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,* 534 U.S. 184 (2002), the Supreme Court held that the term "major" must be "interpreted strictly to create a demanding standard for qualifying as disabled." *Id.* at 197. The

Court made clear that, in passing the ADA, Congress had not "intended everyone with a physical impairment that precluded the performance of some isolated, unimportant, or particularly difficult manual task to qualify as disabled." *Id.* Thus, the Court held, in the context of manual tasks limitations, the relevant inquiry is whether the individual is limited as to the variety of tasks that are "central to daily life." *Id.* at 200-01.

Moreover, not every impairment that *affects* a major life activity is disabling for purposes of the ADA; rather, the limitation that results from the impairment must be substantial. 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(i). A person is "substantially limited" as to a major life activity if she "is either unable to perform a major life function, or is significantly restricted in the duration, manner, or condition under which [she] can perform a particular major life activity, as compared to the average person in the general population." *Contreras v. Suncast Corp.*, 237 F.3d 756, 762 (7th Cir. 2001) (citing 29 C.F.R. § 1630.2(j)). In determining whether an impairment substantially limits a major life activity, the Court considers three factors: (1) the nature and severity of the impairment; (2) the duration of the impairment; and (3) the permanent or long-term impact resulting from the impairment. *Furnish,* 270 F.3d at 450; 29 C.F.R. § 1630.2(j)(2). Thus, "[a]n

individual is not substantially limited in a major life activity if the limitation, when viewed in light of the[se] factors . . ., does not amount to a significant restriction when compared with the abilities of the average person." 29 C.F.R. App. § 1630.2(j).

In *Toyota*, the Supreme Court held that the need to occasionally seek help dressing, even if accompanied by difficulty in performing household chores such as sweeping, did not give rise to a manual task disability because the impairments "did not amount to such severe restrictions in the activities that are of central importance to most people's daily lives." *Toyota,* 534 U.S. at 202. Significant to that holding was the fact that the plaintiff was still able to do a number of tasks that the Court considered central to everyday living; she could, for example, "brush her teeth, wash her face, bathe, tend to her flower garden, fix breakfast, do laundry, and pick up around the house." *Id.*

The cases coming out of this district applying *Toyota* suggest that Ms. Harris' claim should not survive summary judgment. In *Rivera v. Potter*, No. 00 C 8128, 2002 WL 32068972, at *3-4 (N.D. Ill. Sept. 26, 2002), the court held that isolated chores related to feeding and clothing oneself, like chopping onions, cleaning and ironing, were not "centrally important to an average person's daily life" and therefore did not qualify as

major life activities. The court noted, in *Rivera*, that although
these limitations affected the plaintiff's ability to perform
household chores, they did not establish that the plaintiff was
"significantly restricted" in her ability to perform such tasks;
based on the evidence presented, the court could not say that the
plaintiff's impairment limited her ability to perform the "wide
variety" of tasks necessary to pass the "substantially limited"
hurdle. *Id.* at *4.

Similarly, in *Christner v. American Eagle Airlines, Inc.*,
No. 02 C 0211, 2003 WL 21267105, at *5 (N.D. Ill. May, 30, 2003),
the court held that the inability to manually handle certain
types of clothing, like the collar of a shirt, does not amount to
a limitation as to a major life activity; that limitation "is a
far cry from not being able to perform the variety of manual
tasks necessary to care for [oneself] on a daily basis." And in
*Caroselli v. Allstate Insurance Co.*, No. 01 C 6834, 2004 WL
407004, at * (N.D. Ill. Feb. 23, 2004), a case involving a woman
who suffered from fibromyalgia, the court recognized that the
plaintiff's impairment "affected [her] life and required her "to
make some adjustments to cope with her condition", but
nonetheless held that she was not "significantly restricted in
performing major life activities." *Id.* at *4. Significant to
the court's holding was the fact that Caroselli could still
"perform the functions of daily life that are central to most

people's lives"; she could "get herself and her daughter ready in the mornings and can perform the normal morning tasks without assistance," she could "perform various household tasks to care for herself and her family, and she can perform these tasks with minimal assistance." *Id.*

On the flip side, in *Lewis v. Henderson*, 249 F.Supp.2d 958, 968 (N.D. Ill. 2003), the court held that evidence that the plaintiff was unable to perform some household tasks, including mowing the lawn, making home repairs, carrying groceries, mopping the basement, and working in the yard, was sufficient to create a genuine issue of material fact as to whether the plaintiff was substantially limited in a major life activity. The court based its conclusion on its assessment that "[s]ome of those tasks are central to a person's daily lives [sic]." *Id.* The court did not explain which of the enumerated tasks was central and which was not, but, in any case, the court ultimately entered summary judgment in favor of the employer because it found that the plaintiff was not "otherwise qualified" to perform the essential functions of his job. *Id.* at 969-70.

Ms. Harris falls on the side of the former cases, rather than the latter case. She has not alleged that she is limited in a wide variety of activities related to caring for herself, her home, or her family. Instead, Ms. Harris' purported limitations as to opening new jars and fastening clothing behind her back are

20

more analogous to the arguments rejected by the courts as insufficient to establish a substantial limitation as to a major life activity. Like the plaintiffs in *Toyota*, *Rivera*, *Christner* and *Caroselli*, Ms. Harris is able to bathe herself, wash her face, brush her teeth, and care for herself on a daily basis; she can feed and clothe herself, though she may need assistance at times with these tasks – specifically with opening new jars and with fastening clothing behind her back. Nothing in the record suggests that Ms. Harris is unable to do household chores, clean her home, do laundry, make home repairs, carry groceries or work in her yard. Ms. Harris' allegations amount to minor limitations with respect to, at most, a few discrete tasks that are relatively insignificant to daily life, and do not establish a significant limitation in any major life activity.

And although eating constitutes a major life activity for purposes of the ADA, *see Lawson v. CSX Transp., Inc.,* 245 F.3d 916, 923 (7th Cir. 2001), Ms. Harris' inability to open new, tightly sealed jars is an isolated part of cooking and preparing food, and it is a task that many people struggle with; nothing in the record suggests that her limitation impacts her ability to feed herself or to cook for herself. There is no evidence that Ms. Harris is unable to pick up a fork, dish, or piece of food to eat; rather, the evidence shows only that Harris cannot open a tightly sealed jar, a small subset of food-related containers.

Her claim would be more convincing if jarred food was the only sustenance available to Ms. Harris, but the Court has no reason to think that that is the case.

It is important to note that the Supreme Court has demanded a strict interpretation of the terms "major" and "substantial" in order to keep disability status relatively exclusive. *Toyota*, 534 U.S. at 197-98. For example, the Court noted that Congress must not have intended to include in the ranks of the disabled the 100 million people who require corrective lenses, because, if that had been Congress' intent, its findings as to the number of disabled Americans would have been much higher than 43 million. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 487 (1999); *see also Mays v. Principi*, 301 F.3d 866, 869-70 (7th Cir. 2002) ("The number of Americans restricted by back problems to light work is legion. They are not disabled."). Similarly, Congress's finding as to the number of disabled Americans would have been dramatically higher had Congress intended to grant disability status to all individuals who have difficulty opening new, tightly sealed jars or fastening clothing behind their backs. These activities are so insignificant in the context of everyday living that no rational jury would find that limitations as to their performance amounts to such a severe limitation on a wide variety of activities central to daily life; certainly these activities are far less central than, say, breathing, seeing, and

hearing. Because Ms. Harris cannot establish that she is actually substantially limited as to a major life activity, her "actual impairment" disability claim must fail.

### (2) Perceived Impairment

Ms. Harris alternatively claims that she is "disabled" under the ADA because the Company *believed* that she was unable to work due to her injury. A plaintiff may establish that she is "disabled" within the meaning of the ADA, even if she has no actual disability, so long as she can show that either: (a) the employer mistakenly believed that she had a physical impairment that substantially limits one or more major life activities; or (b) the employer believed that an actual non-limiting impairment substantially limits one or more major life activities. 42 U.S.C. § 12102(2)(c); *Sutton*, 527 U.S. at 489. This Court need not brood over which prong of the statute might apply to this case, because Ms. Harris cannot meet a requirement shared by both: that the employer believe the plaintiff is *substantially* limited as to a major life activity. Specifically, Ms. Harris' claim fails because she has offered no evidence tending to show that the Company believed she suffered from a permanent or long-term impairment.

It is undisputed that the Company believed, based on a fax from Dr. Washington, that Harris was completely unable to work for several weeks immediately following her injury. But this fax

23

stated that Ms. Harris' leave was to last only until January 2, 2002, and, as discussed above, the record contains no evidence suggesting that the Company had notice or otherwise believed that Ms. Harris' leave would be extended beyond this date. In fact, Company records submitted by Ms. Harris suggest that the Company fully expected her to return to work on January 2, 2002.

The record, at best, suggests that, when the Company fired Ms. Harris on January 9, 2002, it believed that she had been rendered temporarily unable to work because of her injury, and that she would be able to begin working again on January 2, 2002. And both the Supreme Court and the Seventh Circuit have held that temporary or short-term impairments are insufficient to establish disability status under the ADA. *Toyota,* 534 U.S. at 198; *Matthews,* 128 F.3d at 1197. Because Ms. Harris has submitted no evidence to allow a jury to find that the Company perceived, correctly or incorrectly, that she suffered from a permanent or long-term impairment, her "perceived impairment" disability claim, like her "actual impairment" disability claim, must fail.

## CONCLUSION

For the foregoing reasons, the Court finds that Ms. Harris filed her Complaint too late, and that, even if she had not, her claim would nonetheless fail because she cannot demonstrate that she is an individual with a disability within the meaning of the ADA. Accordingly, the Court grants the Company's Motion for Summary Judgment.

Dated: August 18, 2004

ENTER:

*Arlander Keys*

ARLANDER KEYS
United States Magistrate Judge

# United States District Court
## Northern District of Illinois
### Eastern Division

Phyllis L. Harris

v.

The Picture People

**JUDGMENT IN A CIVIL CASE**

Case Number: 03 C 3032

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been
tried and the jury rendered its verdict.

☐ Decision by Court. This action came to trial or hearing before the Court. The issues
have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that   Defendant's Motion for Summary
Judgment is hereby granted.

Michael W. Dobbins, Clerk of Court

Date: 8/18/2004

Alicia Castillo, Deputy Clerk